UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PARK WEST GALLERIES, INC.,

        CASE NO. 08-12274
   Plaintiff,        HON. LAWRENCE P. ZATKOFF

vs.

DAVID CHARLES PHILLIPS,

   Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on March 19, 2009

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue or, in the alternative, to Transfer Case (Docket #7). Plaintiff filed a response, and Defendant filed a reply. On December 18, 2008, the Court issued an Opinion and Order holding Defendant's Motion in abeyance pending a period for limited discovery. Following the expiration of the discovery period, each party filed a supplemental brief. The Court finds that the facts and legal arguments pertinent to Defendant's Motion are adequately presented in the parties' papers, and the decision process will not be aided by oral arguments. Therefore, pursuant to E.D. Mich. Local R. 7.1(e)(2), it is hereby ORDERED that Defendant's Motion be resolved on the briefs submitted, without this Court entertaining oral arguments. For the reasons that follow, Defendant's Motion is DENIED.

## II. BACKGROUND

Plaintiff, a Michigan corporation, is a private art gallery that conducts business throughout

the United States and, at least as it pertains to the sale of art on cruise ships, throughout the world. Defendant is a resident of the state of Washington and writer who specializes in visual arts. As it relates to this case, Defendant was hired as a contract writer by Fine Art Registry, LLC, an Arizona limited liability company ("FAR"), which operates a website dedicated to, in part, exposing fraudulent practices and unethical behavior in the art world.

Prior to the filing of Plaintiff's Complaint, Defendant had written at least six articles assailing Plaintiff's business practices, including one "interview" with Bruce Hochman ("Hochman"), a person who claims to be one of the country's most knowledgeable experts on authentic Salvador Dali works.[1] Plaintiff alleges that at least some of the statements made in the Hochman interview and the other articles authored by Defendant, all of which were published on the FAR website, were false and defamatory as to Plaintiff.

### III. ANALYSIS

Defendant asserts that:

1. He has no contacts whatsoever with the State of Michigan;
2. He has never set foot in the State of Michigan;
3. He entered into a contract with an Arizona company [FAR] under which he was to author an article for the company;
4. The Arizona company [FAR] published the article on its website; and
5. A Michigan company [Plaintiff] takes umbrage at what is published.

On that basis, Defendant maintains that (a) this Court should not exercise personal jurisdiction over him, (b) venue is improper pursuant to 28 U.S.C. § 1391(a), and (c) the case should be transferred to the Western District of Washington.

---

[1]Plaintiff alleges that Defendant has published at least an additional six articles about Plaintiff's business practices on the FAR website since the filing of the Complaint, as well as participating in the publication by FAR of a 48 minute video regarding Plaintiff's business practices.

**A.     Personal Jurisdiction**

   *1.     Standard of Review*

For a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), it is well settled that Plaintiff bears the burden of establishing that personal jurisdiction exists in this Court. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *accord Am. Greeting Corp. v. Cohn*, 839 F.2d 1164, 1168 (6th Cir. 1988); *Weller v. Commwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).  Once a defendant has filed a properly supported motion for dismissal, Plaintiff "may not stand on . . . [its] pleadings, but must, by affidavit or otherwise, set forth specific facts showing that the court has [personal] jurisdiction [over defendant]." *Theunissen*, 935 F.2d at 1458 (citing *Weller*, 504 F.2d at 930).  Here, Defendant has filed a properly supported motion for dismissal, and each party has submitted numerous documents in support of its or his position.

   *2.     Michigan Long-Arm Statute and Due Process*

Under F.R.C.P. 4(e), the Court must look to the Michigan long-arm statute, M.C.L.A. § 600.715, to determine whether personal jurisdiction exists in the case at bar.  M.C.L.A. § 600.715 provides, in pertinent part:

> The existence of any of the following relationships between an individual or his agent and the State shall constitute a sufficient basis of jurisdiction to enable a Court of record of this State to exercise limited personal jurisdiction over the individual and to enable the Court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
>    (1)  The transaction of any business within the State.
>
>    (2)  The doing or causing any act to be done, or consequences to occur, in the state, resulting in an action for tort.

In *Sifers v. Horn*, 385 Mich. 195 (1971), the Michigan Supreme Court stated that the phrase "transaction of any business within the State" found in M.C.L.A. § 600.715 "means just what it says. It includes 'each' and 'every' . . . . It comprehends the 'slightest'" contact. *Id.* at 199 n.2. *See also*

*Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 905-906 (6th Cir. 1988). "However, constitutional concerns of due process limit the application of this state law." *Theunissen*, 935 F.2d at 1459 (citation omitted). A defect in the Due Process considerations "would foreclose the exercise of personal jurisdiction even where a properly construed provision of the long-arm statute would permit it." *Id.* The relevant criteria for Due Process consideration (the *Mohasco* requirements) are:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Theunissen*, 935 F.2d at 1460 (quoting *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1299 (6th Cir. 1989), *cert. denied*, 494 U.S. 1056 (1990)) (citing *Southern Machine Co. v. Mohasco Industries, Inc*., 401 F.2d 374, 381 (6th Cir. 1968)).

   *3.*     *Exercise of Personal Jurisdiction is Authorized*

In Paragraphs 2, 5, 8, 9, 10 and 11 of its Complaint, Plaintiff alleges that Defendant has connections to Michigan, as follows:

> 2.   . . . Since at least September 2007, Phillips has, through Fine Arts Registry's website, made false and defamatory statements about Park West which appeared in Southfield, Michigan and elsewhere, and attempted to destroy Park West's goodwill and reputation by use of defamation and tortious interference with its customer relationships.

> 5.   Since at least September 2007, Defendant Phillips, through the FAR website and Franks website[,] has published numerous false and defamatory statements about Park West which were disseminated throughout the United States including Southfield, Michigan. Defendant Phillips essentially has attempted to destroy Park West's good will and reputation by use of defamatory statements. Defendant Phillips has also interfered with existing contractual relationships between Park West and its customers and further interfered with Park West's prospective business opportunities.

> 8.   FAR, [Theresa] Franks and their agent and/or employee David Phillips operate an internet website through which art buyers, including those in Michigan, are encouraged to register their purchases, and artists, including those in Michigan, are encouraged to register their artwork. Clients pay an annual $9.95 membership fee plus $2.25 each for numbered tags which are sent to the art owners and artists to be affixed to their artwork.

4

9. As recently as April 2008, FAR, Franks and Phillips accepted membership registrations from both artists and collectors in Michigan. The registrants paid the registration fees for one year memberships and FAR, Franks and Phillips sent them the FAR newsletter.

10. The action of defendant Phillips constitutes the transaction of business within the state of Michigan for purposes of personal jurisdiction. Such actions also establish that defendant Phillips has minimum contacts with the state of Michigan such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice.

11. The defamatory statements of defendant Phillips were made with the full knowledge of defendant of the effect such statements would have on the business reputation of Michigan based Park West.

Based on documents filed with the Court, it is clear that Defendant has attacked extensively the art work sold by Plaintiff. Defendant has authored at least six articles critical of Plaintiff on the FAR website. Since the Complaint was filed, Defendant allegedly has continued to publish similarly negative articles on the FAR website. Each such article, as well as numerous press releases issued by FAR, identifies Defendant as FAR's Publications Director and the person to contact about such articles. In addition, Defendant has communicated with customers of Plaintiff who have sought to return art purchased from Plaintiff. Defendant has encouraged such persons to demand a full refund for the art purchased from Plaintiff because the art itself is fraudulent and/or because Plaintiff provided false information to such persons when selling the art. Numerous emails to and from Defendant, each identifying Defendant as "Publications Director" for FAR, reflect Defendant's activity.

In authoring articles critical of a Michigan corporation for a worldwide audience, the Court finds that Defendant was "doing or causing an[] act to be done, or consequences to occur in [Michigan], resulting in an action for tort" (as has Plaintiff has filed here). *See Green v. Wilson*, 455 Mich. 342, 352 (1997) ("A plain language reading of those words reveals that either the tortious conduct or the injury must occur in Michigan"). If merely authoring and publishing the articles on the internet (which can be viewed by residents of any state, including Michigan) does not, in itself,

constitute conduct occurring in Michigan, Defendant's correspondence with persons suggesting that they attempt to get their money back from Plaintiff certainly causes injury to occur in Michigan.

Despite Defendant's claims to the contrary, the Court concludes that the lack of evidence that Defendant corresponded directly with persons in Michigan does not preclude the exercise of personal jurisdiction over Defendant.[2] First, as there is nothing in any of the correspondences with Defendant to indicate the residency of the person communicating with Defendant, it appears to the Court that Defendant is willing to correspond and transact with persons anywhere, including those who reside in Michigan. As FAR has members in Michigan, and as the articles Defendant has authored have a worldwide audience (including any person in Michigan with access to the internet), the Court cannot find that Defendant is attempting to avoid directing his activities at residents of Michigan. This is not an instance where Defendant is writing an article in a local, or even a regional, paper in the western part of the country. Rather, by the very nature of using the internet, Defendant is attempting to disseminate his articles and criticism of Plaintiff to as broad a spectrum as possible, including to residents of Michigan.

For the foregoing reasons, the Court concludes that Defendant's contacts with Michigan are enough to authorize the Court's exercise of personal jurisdiction over Defendant pursuant to M.C.L.A. §600.715.

*4.     Due Process Not Offended*

As the Sixth Circuit has recognized, however, the mere authorization of the laws of Michigan to exercise personal jurisdiction over a defendant is not enough. Rather,

> [i]n order to survive [Defendant]'s motion to dismiss, [Plaintiff is] required to present a prima facie case that the . . . court's exercise of personal jurisdiction would not offend due process. [Plaintiff] therefore must establish with reasonable particularity sufficient minimum contacts with Michigan so that the exercise of jurisdiction

---

[2] The Court notes that Defendant asserted that he was not available for deposition during the discovery period ordered by the Court, yet Defendant was able to sign an affidavit in the State of Washington just days later. The Court also notes the absence in the record of direct responses to much of the information requested of Defendant by Plaintiff, though it is likely that such evidence may be within the control of FAR (and not Defendant personally).

6

>over [Defendant] would not offend "traditional notions of fair play and substantial justice."

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889 (6th Cir. 2002) (citations omitted). If Plaintiff can satisfy the *Mohasco* requirements, *supra*, due process will not be offended.

### a.  Purposeful Availment

Based on the website operated by FAR, FAR engages in global marketing, including to residents of Michigan. In fact, according to Franks, approximately two percent (2%) of FAR's members are Michigan residents. According to FAR's owner, Defendant "is the executive in charge of all FAR publications," which publications are intended for a worldwide audience, including to residents of Michigan. In writing articles about Plaintiff, a Michigan corporation, Defendant has indicated that Plaintiff engages in unethical business practices. In email communications, Defendant has encouraged persons to demand refunds from Plaintiff because of Plaintiff's allegedly fraudulent and/or unethical business practices. Each of these activities involved purposeful, intentional activity that created foreseeable harm to Plaintiff in Michigan.

Accordingly, for the reasons set forth above, the Court concludes that Defendant has purposefully availed "himself of the privilege of ... causing a consequence in the forum state" of Michigan. *See Theunissen, supra*.

### b.  Cause of Action Connected to Michigan Activities

Plaintiff's cause of action is for (1) defamation, (2) tortious interference with Plaintiff's business relationships, and (3) interference with prospective business advantage. Each claim is based on allegedly defamatory statements by Defendant concerning the authenticity of Salvador Dali artwork sold by Plaintiff, a Michigan corporation. If Plaintiff's allegations are true, Defendant's statements were published worldwide, including to persons in Michigan. Moreover, such statements would cause injury to Plaintiff's business in Michigan. Accordingly, the Court concludes that Plaintiff's cause of action arises from alleged activities of Defendant directed at, and which allegedly have caused consequences to occur in, the forum state of Michigan.

### c.     **Substantial Connections**

The acts of Defendant and the consequences of his acts must have a substantial enough connection with Michigan to make the exercise of jurisdiction over Defendant reasonable here. *Air Products & Controls, Inc. v. Safetech Int'l Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). As discussed above, Defendant took purposeful and intentional actions for which he should reasonably have anticipated being haled into court in Michigan because his "contacts with the forum proximately resulted from actions by the defendant himself that create a substantial connection with the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). Although Defendant wrote the articles in Washington and they were published on an Arizona company's website, the fact that the articles were written to criticize a Michigan corporation (*i.e.*, the allegedly defamatory statements were not an ancillary part of the articles) and be published on the internet, for worldwide viewing and consumption (as opposed to an article in a local publication), evidences that there are substantial connections with Michigan. *See e.g.*, *Bochan v. LaFontaine*, 68 F.Supp.2d 692 (E.D. Va. 1999).

Moreover, there is no indication that, as "Publications Director" for FAR, Defendant's correspondence for FAR and with FAR customers were limited to residents of certain states (such as Washington, Arizona or California). Rather, Defendant's comments about Plaintiff and the correspondence with persons (including those who he tried to persuade to purchase FAR memberships) were indiscriminate, *i.e.*, it didn't matter what state they lived in. As Franks, the owner of FAR, acknowledged, FAR has customers all over, including in Michigan. Thus, although Plaintiff has not yet demonstrated that Defendant himself corresponded with Michigan residents, clearly the company for whom he solicited memberships did seek out Michigan residents. Finally, "where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477. The Court finds that Defendant has not offered any such compelling considerations to the Court.

8

Accordingly, for the reasons set forth above, the Court finds that Defendant has substantial enough connections with the State of Michigan such that it would be reasonable to exercise personal jurisdiction over Defendant.

### d.     Conclusion

For the reasons set forth above, the Court finds that (1) Defendant has sufficient minimum contacts with Michigan such that the exercise of jurisdiction over him would not offend "traditional notions of fair play and substantial justice," and (2) Plaintiff has established a prima facie case that the Court's exercise of personal jurisdiction over Defendant would not offend due process.  Accordingly, the Court denies Defendant's motion to dismiss on the basis of a lack of personal jurisdiction.

**B.     28 U.S.C. § 1391(a)**

Defendant also argues that the case should be dismissed because venue in this Court is improper pursuant to 28 U.S.C. § 1391(a), which states in pertinent part:

> (a)     A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in:
>
> (1)     a judicial district where any defendant resides, if all defendants reside in the same State,
>
> (2)     a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated, or
>
> (3)     a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action otherwise may be brought.

Defendant asserts that since (a) he resides in Washington, (b) he is an independent contractor for FAR, and (c) the complained of articles were published in Arizona, venue is not proper in Michigan. As Defendant resides in Washington, venue is not applicable under subpart (1).  Subpart (3) also is inapplicable in this case because the action could be brought in the Western District of Washington, where Defendant resides.  Thus, venue is proper in the Eastern District of Michigan only if subpart

9

(2) can be satisfied.

Although the articles allegedly were drafted in Washington and published in Arizona, the Court finds that the exercise of jurisdiction in this judicial district is proper. As discussed above, a substantial part of the events giving rise to the claim occurred in this judicial district. For example, the articles were published on the internet and were, therefore, published to persons in Michigan. Defendant's suggestions to persons that they seek full refunds from Plaintiff, which some persons did, also constitute events in Michigan that give rise to Plaintiff's claim. Those conclusions mean that venue is proper in this judicial district under § 1391 because a plaintiff may file his complaint in *any* forum where a substantial part of the giving rise to the claim arose. *See First of America Corp. v. Bramlet*, 141 F.3d 260, 263-64 (6th Cir. 1998) (holding that § 1391 does not require the forum to have the most substantial connection, only that it be a forum with a substantial connection to the plaintiff's claim). Thus, Defendant's motion to dismiss based on 28 U.S.C. § 1391(a) is denied.

**C.     Transfer Case**

28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The moving party bears the burden of showing that a transfer is warranted, and must make this showing by a preponderance of the evidence. *Amphion, Inc. v. Buckeye Elec. Co.*, 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003). The Court has broad discretion to grant or deny a motion to transfer. *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). When making this determination, the Court must weigh:

(1)     the parties' convenience;

(2)     the witnesses' convenience;

(3)     relative ease of access to sources of proof;

(4)     availability of process to compel attendance of unwilling witnesses;

(5)     cost of obtaining willing witnesses;

> (6) practical difficulties associated with trying the case quickly and inexpensively; and
>
> (7) interests of justice.

*Thomas v. Home Depot, U.S.A., Inc.*, 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001).

### *1.     The parties' convenience*

Plaintiff resides in the Eastern District of Michigan, and Defendant lives in the Western District of Washington. As such, each party would be greatly inconvenienced by this case being tried in the forum desired by the other party. Generally, however, a plaintiff's choice of forum is given substantial deference. *Sloan v. BorgWarner Diversified Transmission Prod.*, No. 06-10861, 2006 WL 1662634, *4 (E.D. Mich. 2006). Thus, as Plaintiff filed the action in the Eastern District of Michigan, this factor favors the case being tried here.

### *2.     The witnesses' convenience*

The witnesses' convenience "is one of the most important factors in determining whether to grant a motion to change venue under § 1404(a)." *Thomas*, 131 F.Supp.2d at 937. In this case, it seems likely to the Court (neither party identified the names or residences of any witnesses other than the parties) that many of the witnesses reside in Arizona (where FAR is located), many of the witnesses reside in Michigan (where Plaintiff is located), and as far as the Court can tell, only Defendant lives in the Western District of Washington. Defendant argues that most of the witnesses in the case live in the western portion of the United States. The Court is not persuaded that is significant in this case, however, as most of those witnesses would need to fly to the Western District of Washington, just as they would have to fly to the Eastern District of Michigan. Accordingly, the Court finds that this factor slightly favors Plaintiff.

### *3.     Relative ease of access to sources of proof*

Defendant claims that the sources of proof, "namely the writings of Defendant, and documentation supporting his claims are all in the State of Washington or on the Western side of the United States." The allegedly fraudulent works of art that have been sold could be anywhere in the world, however, and any works of art in possession of Plaintiff (and/or Plaintiff's documentation

11

or authentication related to the art at issue) likely would be in the Eastern District of Michigan. Accordingly, the Court finds that this factor does not favor either party.

*4.     Availability of process to compel attendance of unwilling witnesses*

Neither party has identified any unwilling witnesses. A general possibility of unwilling witnesses does not favor a transfer. *See Thomas*, 131 F. Supp. 2d at 940. Thus, this factor does not favor either forum.

*5.     Cost of obtaining willing witnesses*

Defendants argue that the cost will be "astronomical" for the witnesses to come to the Eastern District of Michigan for court proceedings and/or trial, as most of the witnesses reside in the western part of the United States. Again, as those witnesses would have to fly whether they are going to the Eastern District of Michigan or the Western District of Washington (and Defendant has not offered any evidence that a flight to Detroit would cost significantly more than a flight to Seattle), the Court is not persuaded that this factor favors either forum.

*6.     Practical difficulties associated with trying the case quickly and inexpensively*

Defendant argues that it would be more practical for Defendant to mount a fair defense in Washington than in Michigan. Defendant also asserts that it is much more practical to hold the case in Washington than in Michigan because of Washington's closer proximity to witnesses and discovery documents. Based on the information discussed above (generally, that Plaintiff has comparable issues, costs, etc. if the case is transferred to Washington), however, the Court finds that this factor does not favor either forum.

*7.     Interests of justice*

The only connection the case has to the Western District of Washington is that Defendant resides there. As such, the Court cannot conclude that the interests of justice dictate transferring this case to the Western District of Washington.

*8.     Conclusion*

Based on the totality of the circumstances, the Court finds that Defendant has not met his

burden of showing that a transfer to the Western District of Washington is warranted.  Accordingly, Defendant's motion to transfer case is denied.

### IV.  CONCLUSION

Accordingly, and for the reasons set forth above, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue or, in the alternative, to Transfer Case is DENIED.

IT IS SO ORDERED.

                      s/Lawrence P. Zatkoff
                      LAWRENCE P. ZATKOFF
                      UNITED STATES DISTRICT JUDGE

Dated:  March 19, 2009

### CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on March 19, 2009.

                      s/Marie E. Verlinde
                      Case Manager
                      (810) 984-3290